**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
SPARTANBURG DIVISION
Civil Action No.:  7:17-cv-373-TMC**

| | |
|---|---|
| **PENN NATIONAL SECURITY INSURANCE COMPANY AND PENNSYLVANIA NATIONAL MUTUAL CASUALTY INSURANCE COMPANY,** ) ) ) ) | |
| **Plaintiffs,** ) | **DEFENDANTS WINTHROP AND PICKENS' JOINT RESPONSE AND CROSS-MOTION FOR JUDGMENT ON THE PLEADINGS** |
| **v.** ) ) | |
| **PICKENS ROOFING AND SHEET METALS, INC. AND THE WINTHROP UNIVERSITY TRUSTEES FOR THE STATE OF SOUTH CAROLINA,** ) ) ) ) ) | **ORAL ARGUMENT REQUESTED** |
| **Defendant.** ) ) | |

Defendants, The Winthrop University Trustees for the State of South Carolina ("Winthrop") and Pickens Roofing and Sheet Metals, Inc. ("Pickens) (collectively "Defendants"), jointly respond to Penn National Security Insurance Company ("PNSIC") and Pennsylvania National Mutual Casualty Insurance Company's ("PNMCIC") (collectively "the Plaintiffs") Motion for Judgment on the Pleadings, while jointly cross-moving for Judgment on the Pleadings.  Pickens joins in this Response in that it supports the legal claims of Winthrop relating to the coverage issues set forth herein. By joining in this Response, Pickens does not waive any rights that it may have in any future retrial of the underlying lawsuit which is presently on appeal, nor does Pickens make any admissions as to any factual aspects contained in this Response which may be construed against Pickens' interests in this or in the underlying lawsuit or appeal.  In support of the foregoing, Defendants jointly state the following:

1

## PREFATORY STATEMENT

Plaintiffs characterize this Action as one of "first impression" under South Carolina law. It is not. It is a straight-forward third party coverage Action involving two insurers who have a legal obligation to pay for property damages their insured caused when, negligently and in breach of its roofing contract, that insured left combustibles atop Winthrop's buildings which caused a fire. In fact, the only novel issue is the extraordinary lengths Plaintiffs will go to avoid their legal obligation to pay monies rightfully owed.

**More than 8 years ago**, in exchange for $70,277.00 in premiums, Plaintiffs issued to Pickens a commercial general liability insurance policy <u>and</u> an umbrella general liability insurance policy, which provided Pickens, among other things, $6 million in liability coverage (collectively the "Policies"). *See respectively PNSIC Policy, ECF Dkt. no. 1-1, p. 84 of 190, and PNMCIC Policy, ECF Dkt. no. 1-2, p. 4 of 47, attached to Pls. Amd. Compl.*

**More than 7 years ago**, Winthrop advised Plaintiffs that because their insured, Pickens, caused a fire that damaged two halls at Winthrop, Plaintiffs should pay for those damages, pursuant to the Policies. *See June 2, 2010 Letter of Pls. adjuster, John Ermalinksi, ECF Dkt. no. 1-4, p. 2, attached to Pls. Amd. Compl.* Plaintiffs rejected Winthrop's demand and refused to pay for any of the damages. *Id.*   A lawsuit by Winthrop against Pickens ensued. *See Pls. Memo. in Support of their Mtn. for Judg. on the Pleadings ("Memo. in Support"), ECF Dkt. no. 27-1, p. 3.*

**More than 3 years ago**, the jury in that lawsuit disagreed with Plaintiffs and awarded Winthrop $7,223,343.14 in damages. *See Trial Court Rulings, attached to Pls.*

*Amd. Compl., ECF Dkt. no. 1-10, pp. 1-8.* Once again, Plaintiffs refused remuneration. *See infra.* Plaintiffs and Pickens appealed the trial court's rulings, and **more than 1 year ago**, the South Carolina Court of Appeals affirmed *in all respects* the trial court's ruling and the jury's award of damages. *See Appellate Court Ruling, attached to Pls. Amd. Compl., ECF Dkt. no. 1-12, pp. 1-21.*

**Now**, after more than 7 seven years of refusing Winthrop's claim, Winthrop's settlement offers within the Policies' limits, and exposing Pickens to not just liability above the Policies' limits, but potential bankruptcy, Plaintiffs have instituted the instant Action arguing that the Policies do not cover any portion of the $7+ million judgment. In essence, after 7 years and more than $70,000 in insurance premiums, Plaintiffs now wish to leave Pickens, and as a result, Winthrop "high and dry."

In support of their Motion, Plaintiffs posit two arguments. First, they argue that a legal claim for "breach of contract do[es] not give rise to coverage under the [Policies] because" a claim for breach of contract does not constitute an "occurrence". This is absurd. An "occurrence" under South Carolina law and Plaintiffs' own Policies is based upon the underlying loss event—*i.e.*, the fire that occurred—not the particular legal cause of action an injured party asserts or upon which it ultimately recovers. Plaintiffs' next and final argument is that the Policies' "Contractual Liability" exclusion precludes coverage. Without analysis, supporting facts, or any case law, Plaintiffs simply conclude that this Exclusion applies.

Perhaps most deficient though are Plaintiffs' Reservation of Rights letters. *See Pls. Amd. Compl., ECF Dkt. no. 5, ¶¶24, 28, 29, 30 (citing to their Mar. 15, 2010 letter, ECF Dkt. no. 1-3; Dec. 12, 2012 letter, ECF Dkt. no. 1-7; Aug. 6, 2013 letter, ECF Dkt.*

3

no. 1-8; and  Dec. 19, 2013 letter, ECF Dkt. no. 1-9) (collectively the "ROR Letters"). Plaintiffs' ROR letters are more defective than the reservation of rights letters recently deemed deficient by the South Carolina Supreme Court in *Harleysville Grp. Ins. v. Heritage Comms., Inc.*, <u>which are attached hereto for comparison</u>. *Id.,* 2017 WL 105021 (S.C. July 26, 2017)*; see also Ex. A, Harleysville Dec. 11, 2003 ROR Letter; Ex. B, Harleysville Dec. 12, 2003 Lttr.; Ex. C, Harleysville Jan. 23, 2004 ROR Letter; Ex. D, Harleysville Jan. 27, 2004 Lttr.; and Ex. E, Harleysville Feb. 9, 2004 Lttr.* (collectively "the Harleysville ROR Letters"). Plaintiffs' ROR Letters do not, among other things, explain how any of the provisions in the Policies, including the provisions Plaintiffs are currently asserting, apply to preclude coverage; they do not notify Pickens that Plaintiffs may pursue a declaratory judgment action; nor do they advise Pickens that the potential of covered and non-covered damages exists. In sum, Plaintiffs' ROR Letters fail to preserve Plaintiffs' right to now contest coverage. Accordingly, for each of these reasons which are discussed below, Plaintiffs' Motion for Judgment on the Pleadings must be denied and Defendants' Joint Cross-Motion for Judgment on the Pleadings must be granted.

### STATEMENT OF FACTS AND APPLICABLE LEGAL STANDARDS

Winthrop and Pickens do not dispute the statements in the "Fact" section or the case law in the "Standard of Review" section set forth on pages 2 through 10 of Plaintiffs' Memorandum in Support of their Motion for Judgment on the Pleadings. *See Id.*, ECF Dkt. no. 27-1. Winthrop and Pickens contend for the reasons set forth in this Response and Cross-Motion that the statements within those sections, as well as the statements and argument contained herein, require this Court to grant Judgment on the

Pleadings, not for Plaintiffs, but for Winthrop and Pickens.

## LEGAL ANALYSIS[1]

Plaintiffs' Motion and Supporting Memorandum for Judgment on the Pleadings asserts two bases as to why coverage under the Policies does not exist: (1) a legal claim for breach of contract does not constitute an "occurrence" under the Policies, and (2) the Policies' "Contractual Liability" Exclusion bars coverage. *See Pls. Supp. Memo., ECF Dkt. no. 27-1, pp. 12-15.* Pickens and Winthrop, as detailed below, jointly respond to Plaintiffs' Motion, disputing these bases, while simultaneously moving for Judgment on the Pleadings.  Accordingly, Plaintiffs' Motion must be denied and Defendants' Joint Motion must be granted.

### I.    Plaintiffs' ROR Letters Failed to Preserve Plaintiffs' Coverage Arguments.

Before addressing the merits of Plaintiffs' coverage arguments, this Court must first determine whether Plaintiffs' ROR Letters are sufficient as a matter of law. As detailed below, they are not.

The seminal case on insurers' reservation of rights letters is the South Carolina Supreme Court decision in *Harleysville Grp. Ins. v. Heritage Communities, Inc.*, 2017 WL 3220558 (July 26, 2017). There, between 1997 and 2000, related corporate entities Heritage Communities, Heritage Magnolia North, Inc., and Heritage Riverwalk, Inc.

---

[1] Plaintiffs, by citing only to South Carolina law in their Motion and Supporting Memorandum apparently agree with Winthrop that South Carolina law governs this dispute.  *See also* S.C. Ann. §38-61-10, which holds that [a]ll contracts of insurance on property … or interests in this State are … subject to the laws of this State". *Accord Sangamo Weston, Inc. v. Natl. Sur. Corp.*, 414 S.E.2d 127 (1992); *see also Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, 559 U.S. 393 130 S.Ct. 1431 (2010) ("It is a long-recognized principle that federal courts sitting in diversity must apply state substantive law and federal procedural law.") (Internal citations omitted.)

(collectively "Heritage") constructed two residential developments entitled "The Riverwalk" and "Magnolia North" in South Carolina. In 2003, each development's property owners' association filed suit against Heritage seeking actual and punitive damages for negligent construction, breach of fiduciary duty, and breach of warranty. *Id.* at *1-2. Heritage tendered defense to its carrier, Harleysville Group Insurance ("Harleysville"), who agreed to defend Heritage subject to its reservation of rights. *Id.* At trial, relative to The Riverwalk matter, the jury returned verdicts of $6,500,000 in actual damages and $2,000,000 in punitive damages; whereas in the Magnolia North matter, the jury returned verdicts of $4,550,000 in actual damages and $1 million in punitive damages. *Id.* Following these verdicts, Harleysville commenced separate declaratory judgment actions against Heritage. *Id.*

In those actions, a special referee presided. He ultimately ruled that Harleysville's commercial general liability policies ***did obligate*** Harleysville to indemnify Heritage. *Id.* at *3-4. The primary basis of his ruling was that Harleysville's ROR Letters did not preserve any of Harleysville's coverage defenses, except on the issue of punitive damages. *Id.* Both actions were appealed to the Supreme Court, who addressed them together.[2] *Id.* Most relevant to this Action is that the Supreme Court affirmed the Special Referee's ruling, which deemed Heritage's ROR Letters deficient. *Id.*

According to the Supreme Court in *Harleysville*, a "reservation of rights letter must give fair notice to the insured that the insurer intends to assert defenses to coverage or to pursue a declaratory relief action at a later date." *Harleysville,* 2017 WL

---

[2] The Supreme Court initially issued an opinion on January 11, 2017, before entertaining further briefing and hearing on the matter, and then, issuing their substituted and final opinion on July 26, 2017. *Id., 2017 WL 3220558 at *1.

3220558, at *6 (quoting *United Nat'l Ins. Co. v. Waterfront N.Y. Realty Corp.*, 948 F.Supp. 263, 268 (S.D.N.Y. 1996)). The letter must clearly identify "the bases upon which the insurer might dispute coverage." *Id.*, *Harleysville,* 2017 WL 3220558, at *6 (citing *Magnum Foods, Inc. v. Cont'l Cas. Co.*, 36 F.3d 1491, 1498 (10th Cir. 1994)). If an insurer fails to do this, it is precluded from "contesting coverage in a subsequent action …." *Id.*

In addition, if covered and non-covered damages may exist, an insurer's ROR Letter must "inform the insured of the need for an allocated verdict as to covered versus noncovered damages." *Id.* at *6 (citing to *Tyger River Pine Co. v. Maryland Cas. Co.*, 170 S.C. 286, 170 S.E. 346, 348 (1933) (observing that where an insurer reserves the right to control the defense, the insured is "directly deprived of a voice or part in such negotiations and defense" and noting that if an insurer's interests conflict with those of its insured, the insurer is "bound, under its contract of indemnity, and in good faith, to sacrifice its interests in favor of those of the [insured]")) (other internal citation omitted).

"For a reservation of rights to be effective, the reservation must be unambiguous; if it is ambiguous, the purported reservation of rights must be construed strictly against the insurer and liberally in favor of the insured." Id. (citing *Desert Ridge Resort LLC v. Occidental Fire & Cas. Co. of N.C.*, 141 F.Supp.3d 962, 966-68 (D. Ariz. 2015) and (explaining that when an insurer controls the defense of the insured under a reservation of rights, **prior to undertaking the defense, the insurer *must specify in detail* any and all bases upon which it might contest coverage in the future since "[g]rounds not identified in the reservation of rights may not be asserted later by the insurer**")) (emphasis added); *id.* (explaining the existence of a potential conflict of

interest between insured and insurer is what requires the insurer to set forth the bases upon which it might contend damages are not covered in a greater amount of detail than would otherwise be required); *Weber v. Biddle*, 4 Wash.App. 519, 483 P.2d 155, 159 (1971) (underscoring that when an insurer controls the defense of the action against its insured, "a high fiduciary duty [i]s owed by the insurer to the insured" and observing a "general notice of reservation of rights failing to refer specifically to the policy provision upon which the insurer wished to rely may be insufficient").

In applying these principles to Harleysville's ROR Letters, the Supreme Court held that, as a matter of law, the Letters were deficient. The Harleysville Letters "explained that Harleysville would provide a defense in the underlying suits", "listed the name and contact information for the defense attorney Harleysville had selected to represent Heritage in each matter", and "identified the particular insured entity and lawsuit at issue, while summarizing the allegations in the complaint"; however, this was not enough. *Id.*, *Harleysville,* 2017 WL 3220558, at *7.

"[E]ach of these letters (through a cut-and-paste approach) incorporated a nine- or ten-page excerpt of various policy terms, including the provisions relating to the insuring agreement, Harleysville's duty to defend, and numerous policy exclusions and definitions. Despite these policy references, ***the letters included no discussion of Harleysville's position as to the various provisions or explanation of its reasons for potentially denying coverage. With the exception of the claim for punitive damages, the letters failed to specify the particular grounds upon which Harleysville did, or might thereafter, dispute coverage***." *Id.* (Emphasis added.) Accordingly, the Court ruled that Harleysville did not preserve its policy defenses,

except on the issue of punitive damages, and thus, it could not now dispute coverage.

Here, when this Court examines Plaintiffs' four purported ROR Letters in light of the foregoing and Plaintiffs' alleged coverage defenses, this Court should hold likewise. Plaintiffs' Amended Complaint asserts three bases as to why coverage is precluded. Counts I and II, which are included in Plaintiffs' Motion for Judgment on the Pleadings, contend that coverage is precluded because a breach of contract claim is not an "occurrence" under the Policies and that the Policies' Contractual Liability Exclusion applies. *See Pls. Amd. Compl., ECF Dkt. no. 5, Cts. I-II pp. 8-11; see also Pls. Memo. in Support, ECF Dkt. no. 27-1.* Count III in Plaintiffs' Amended Complaint, which is not asserted in Plaintiffs' Motion, alleges that if coverage exists, Plaintiffs should be required to indemnify Pickens only for those damages which do not include "the cost to replace the work of Pickens." *Id. at p. 12, ¶68.* None of Plaintiffs' ROR Letters preserve these defenses.

The first purported ROR Letter was issued by PNSIC to Pickens on March 15, 2010, nine days after the fire; whereas the third ROR Letter was issued by both Plaintiffs on August 6, 2013, approximately one-year *after* Winthrop had filed its complaint against Pickens *alleging breach of contract*, negligence, and breach of implied warranty of workmanship. *See ECF Dkt. nos. 1-3 and 1-8, respectively; see also Winthrop's Compl., attached to Pls. Amd. Compl., ECF Dkt. no. 1-5, pp. 3-9.*

Relative to PNSIC's March 15th Letter, it admits that PNSIC "cannot yet determine the affordability of coverage for this claim …." *See ECF Dkt. nos. 1-3.* Further, it contains three cut-and-pasted provisions from the PNSIC Policy, none of which Plaintiffs have raised in either their Motion for Judgment on the Pleadings or their

Amended Complaint. *Compare id. to Pls. Amd. Compl., ECF Dkt. no. 5.* Plaintiffs' August 6 Letter is even more deficient. It does not contain any of Winthrop's allegations; any provision from either of the Policies; or any explanation or analysis as to how any of the provisions Plaintiffs are currently raising in their Motion or in their Amended Complaint preclude coverage—in whole or in part. *Id.* <u>*Indeed, the March 15, 2010 Letter and the August 6, 2013 Letter do not state that a claim for breach of contract does not constitute an "occurrence" under the Policies, that the Policies' Contractual Liability Exclusion may apply, that the potential for covered and non-covered damages exist, nor does either Letter explain how any of these provisions apply to preclude coverage*</u>. *See ECF Dkt. nos. 1-3 and 1-8, respectively.* These undisputed facts alone necessitate this Court deeming Plaintiffs' March 15, 2010 and August 6, 2013 letters deficient to preserve Plaintiffs' coverage defenses. Moreover, both Letters omit any statement that Plaintiffs may assert later a declaratory judgment action. *Id.*

The other two ROR Letters Plaintiffs issued were on December 12, 2012, approximately six months after Winthrop commenced litigation against Pickens, and on December 13, 2013, approximately four months prior to trial. *See Dec. 12, 2012 Letter, ECF Dkt. no. 1-7, and Dec. 13, 2013 Letter, ECF Dkt. no. 1-9, attached to Pls. Amd. Compl.* Both of these Letters are in all material respects identical and likewise fail to preserve any of the coverage defenses in Plaintiffs' Complaint.

For example, relative to Plaintiffs' Occurrence argument, the cut-and-pasted policy-provision sections of Plaintiffs' December 12, 2012 and December 13, 2013 Letters, which Plaintiffs state Pickens should "note", <u>*do not*</u> even include the term "occurrence" or its definition. *See Dec. 12, 2012 Letter, ECF Dkt. no. 1-7, at pp. 3-5,*

and Dec. 13, 2013 Letter, ECF Dkt. no. 1-9, pp. 3-5. The only reference to "occurrence" in **_any_** of Plaintiffs' ROR Letters is at the bottom of these December 2012 and December 2013 Letters' page 5, wherein Plaintiffs vaguely state that "[a]ny situation falling outside the parameters of the definition of 'occurrence' and/or 'property damage' would not be covered." *Id.* **_This is the same "occurrence" language in sum and substance as in all of the Harleysville ROR Letters, which the Supreme Court of South Carolina found deficient_**. *Compare id. to* Ex. A, Dec. 12, 2012 Harleysville Letter, p. 12 (wherein Harleysville states that it was reserving its rights as to "[w]hether property damage or bodily injury was caused by an occurrence as defined by any policy or policies and happened during an HMIC policy period."). *See also Ex. B, Harleysville Dec. 12, 2003 Lttr., p. 12; Ex. C, Harleysville Jan. 23, 2004 ROR Lttr., p. 12; Ex. D, Harleysville Jan. 27, 2004 Lttr., p. 11; and Ex. E, Harleysville Feb. 9, 2004 Lttr.*[3] Moreover, Plaintiffs do not include in these Letters (or any other ROR Letter) any explanation as to how Winthrop's Breach of Contract claim is not an "occurrence" covered by the Policies. Accordingly, this Court must conclude that Plaintiffs' December 2012 and 2013 Letters did not preserve Plaintiffs' right to argue that a breach of contract claim is not an "occurrence" under the Policies.

Relative to Plaintiffs' argument that the Policies' Contractual Liability Exclusion precludes coverage, this Exclusion is mentioned in these Letters only in their cut-and-pasted Policies' section. Neither of the December 2012 and 2013 Letters explain how

---

[3] This argument is under-scored by the admission in Plaintiffs' Motion that, in the underlying action, Pickens agreed that Winthrop's breach of contract claim "should be submitted" to the jury. *See id., ECF Dkt. no. 27-1, p. 4 (citing to the Court's ruling).* It is unreasonable to believe that Pickens was aware that the Policies might preclude coverage if the jury awarded damages under Winthrop's breach of contract cause of action, yet they "knowingly" agreed to submit this cause of action to the jury.

this Exclusion precludes coverage, in whole or in part. Further, both Letters were issued _after_ Winthrop alleged its breach of contract claim, and Plaintiffs admit that, as a matter of law, "Winthrop was required … to elect between the two remedies"; *i.e.* breach of contract and negligence. *Compare Dec. 12, 2012 Letter, ECF Dkt. no. 1-7 and Dec. 13, 2013 Letter, ECF Dkt. no. 1-9 with Winthrop's Compl., dated Sept. 5, 2012, ECF Dkt. no. 1-5, p. 3 of 51; see also Pls. Memo in Supp., p. 4 of 18*. Thus, if Plaintiffs actually believed that the Policies' Contractual Liability Exclusion applied, they had sufficient information to put Pickens on notice; but clearly they did not then or at any other time. As noted above, the South Carolina Supreme Court has held that an insurer must explain "in detail" all bases as to why coverage may not apply, and any ambiguity in an insurer's explanation must be "construed strictly against the insurer and liberally in favor of the insured." *Id.*, *Harleysville,* 2017 WL 3220558, at *6 (quoting *Desert Ridge*, 141 F.Supp.3d at 966-68). Here, because Plaintiffs' December 2012 and 2013 Letters failed, among other things, to explain how the Contractual Liability Exclusion applies, Plaintiffs are barred from now asserting this as a basis to preclude coverage.

Lastly, relative to Plaintiffs' third coverage defense, which again is asserted in their Amended Complaint but _not_ in their Motion for Judgment on the Pleadings, Plaintiffs argue that to the extent coverage exists under the Policies, such coverage should exclude "the cost to replace the work of Pickens." *See Pls. Amd. Compl., ECF Dkt. no. 5, ¶67, p. 12.* None of Plaintiffs' ROR Letters, however, including the December 12, 2012 and December 13, 2013 Letters, mention this issue. Further, Plaintiffs did not intervene in the Winthrop-Pickens action; request special interrogatories; or undertake any other measure to have the jury or the court allocate the more than $7 million at

issue between the potentially covered and non-covered damages. Per the South Carolina Supreme Court, Plaintiffs ***were required to obtain such an allocation during the underlying lawsuit.*** *See Harleysville Grp. Ins.,* 2017 WL 3220558, at *6-7 (holding that because Harleysville "fail[ed] to request special interrogatories or a special verdict in order to clarify coverage of damages" in the underlying litigation, and their ROR Letters did not advise their insured, "of the need for allocation of damages between covered and non-covered losses", Harleysville was rightfully precluded from now raising these issues in the instant litigation.). Furthermore, neither Letter mentions that Plaintiffs intend to pursue a declaratory relief action at a later date or later obtain such an allocation. *See Pls. Dec. 12, 2012 Lttr., ECF Dkt. no. 1-7 and Dec. 13, 2013 Lttr.*

Underscoring the foregoing deficiencies is that trial between Pickens and Winthrop occurred approximately four months after Plaintiffs' last purported ROR Letter. *See* Dec. 19, 2013 Lttr, ECF Dkt. no. 1-9. As admitted by Plaintiffs, Pickens was deemed liable on Winthrop's breach of contract and negligence claim and as a matter of law, Winthrop had to elect which claim to recover. *See Pls. Memo. in Support, ECF Dkt. no. 27-1, p. 4*. Neither then nor over the _next three years_, as Plaintiffs have fruitlessly appealed the underlying matter, did Plaintiffs issue a further ROR Letter, send a declination of coverage correspondence, or, until this Action commenced, advise Pickens that the legal claim Winthrop elected might preclude coverage under the Policies.

In sum, South Carolina law requires Plaintiffs' ROR Letters to, among other things, clearly identify to Pickens why the "Occurrence" language, the Contracts Liability Exclusion, and any other provision precludes coverage. Of Plaintiffs' four ROR Letters, only two contain _any_ reference to any provision currently at issue, and none actually

discuss how these provisions apply. This Court must follow precedent. It must not allow Plaintiffs to shirk their contracted- and paid-for responsibilities. Plaintiffs' ROR Letters did not preserve Plaintiffs' right to now contest coverage. Thus, as a matter of law, Plaintiffs' Motion must be denied and Defendants' Joint Cross-Motion must be granted.

## II.     **The Presence of an "Occurrence" Is Based Upon the Loss Event, Not the Legal Claim Alleged.**

Although this Court should not reach the merits of Plaintiffs' coverage arguments, to the extent it does, Plaintiffs' Occurrence argument should be overruled. Plaintiffs' Occurrence argument is that while a legal claim for negligence <u>can</u> constitute an "occurrence" under the Policies and thereby trigger coverage, a breach of contract claim can not. *See Pls. Memo. in Support, ECF Dkt. no. 27-1, pp. 12-15.* Thus, according to Plaintiffs, because the jury found Pickens liable for negligence <u>and</u> breach of contract *based upon the same loss event*, *i.e.*, the fire, because Winthrop elected to recover under its breach of contract claim, coverage is precluded. *Id.* Respectfully, this is incorrect for a multitude of reasons.

First, the Policies' Insuring Agreement does not include any language conditioning coverage upon the type of legal claim asserted. By asking this Court to hold that a breach of contract can never constitute an "occurrence", Plaintiffs are asking this Court to rewrite the Policies. *See Beaufort Co. School Dist. v. Untd. Nat. Ins. Co.*, 392 S.C. 506, 516, 709 S.E.2d 85, 90 (S.C. App. 2011) (holding that "courts must enforce, not write, contract of insurance" and construe any doubts about a policy's terms in favor of coverage for the insured).

The Policies state that a duty to indemnify exists—not based upon the type of legal claim asserted—but when "'property damage' is caused by an 'occurrence'". *See*

14

PNSIC Policy, ECF Dkt. no. 1-1, p. 102; PNMCIC Policy, ECF Dkt. no. 1-2, p. 24 of 47. The Policies define "property damage" as "physical injury to tangible property" and "occurrence" as "an accident, including continuous or repeated exposure to substantially the same harmful conditions." *See PNSIC Policy, ECF Dkt. no. 1-1, p. 115; PNMCIC Policy, ECF Dkt. no. 1-2, p. 42*. Thus, the only requirement for coverage is an accident or exposure to harmful conditions that causes physical damages. Here, that happened.

The record attached to Plaintiffs' Amended Complaint reveals that the cause of the fire was Pickens' storage of combustibles on the roofs of Winthrop's buildings. *See Verdict Form, ECF Dkt. no. 1-10, p. 4 (ruling that Pickens breached its contract with Winthrop) and the Ct. of Appeals Opinion, ECF Dkt. no. 1-12, pp. 9 and 16* (ruling that "the storage of combustible materials on the flat roof" was "a cause in fact of the damages and was a legal cause" (p. 16); and (p. 9) that "there was evidence from which a jury could find [that] the combustible materials caused most of the damage", and that "[t]he circuit court further held there was evidence from which the jury could find the fire would not have caused such extensive damages but for the presence of combustibles.)[4] Conversely, there is no evidence that Pickens intended to start the fire; nor has Plaintiffs identified or alleged such evidence exists. Thus, an "occurrence" as defined by the Policies exists.

The next reason Plaintiffs' Occurrence argument is incorrect is because to condition coverage upon the type of legal claim asserted renders coverage illusory.

---

[4] *Accord Auto Owners Ins. Co. Inc. v. Newman,* 385 S.C. 187, 197, 684 S.E.2d 541, 546 (2009) (holding that an "occurrence" existed because there was no evidence that contractor intended the water intrusion to occur); *see also Lamar Homes, Inc. v. Mid-Continent Cas. Co.*, 242 S.W.3d 1,8 (Tex. 2007) ("a deliberate act, performed negligently, is an accident if the effect is not the intended or expected result; that is, the result would have been different had the deliberate act been performed correctly.")

Irrespective of whether "physical injury to tangible property" exists, coverage under Plaintiffs' theory would be barred simply by an injured party alleging a claim for breach of contract. To suggest that Pickens paid $70,277 in premiums for coverage which would never apply if an injured party asserts a claim for breach of contract is preposterous.

Third, if Plaintiffs actually intended to exclude from coverage legal claims for breach of contract, then there is an endorsement that they could have included. This endorsement states as follows:

> This insurance does not apply to claims for breach of contract, whether express or oral, nor claims for breach of an implied in law or implied in fact contract, whether "bodily injury," "property damage," "advertising injury," "personal injury" or an "occurrence" or damages of any type is alleged; this exclusion also applies to any additional insureds under this policy.

See *B. Hall Contracting Inc. v. Evanston Ins. Co.*, 447 F.Supp.2d 634, 639 (N.D.Tex.2006). Plaintiffs' Policies do not contain this Endorsement; thus, this Court should not rewrite the Policies to include these terms. *See generally PNSIC Policy, ECF Dkt. no. 1-1; PNMCIC Policy, ECF Dkt. no. 1-2.*

Fourth, neither the Supreme Court of South Carolina nor any South Carolina statute has defined "occurrence" by the type of legal claim asserted. For example, S.C. Ann. §38-61-70 defines "occurrence" in CGL policies as the following:

> Commercial general liability insurance policies shall contain or be deemed to contain a definition of "occurrence" that includes:
>
> (1)     an accident, including continuous or repeated exposure to substantially the same general harmful conditions; and
>
> (2)     property damage or bodily injury resulting from faulty workmanship, exclusive of the faulty workmanship itself.

*Id.* (abrogated in part by *Harleysville Mut. Ins. Co. v. State*, 401 S.C. 15, 29-30, 736

16

S.E.2d 651, 658-59 (S.C. 2012) (such that §38-61-70 does not apply retroactively)). Similarly, in *Auto Owners Insurance Co., Inc. v. Newman*, the Supreme Court of South Carolina held that "the continuous moisture intrusion into the home *was an unexpected happening or event not intended by [the insured]—in other words, an 'accident'*—involving 'continuous or repeated exposure to substantially the same harmful conditions.'" *Id.*, 385 S.C. at 194, 684 S.E.2d at 544-45 (emphasis added) (internal citations omitted). Two years later the South Carolina Supreme Court reiterated this holding in *Crossman Communities of N. Carolina, Inc. v. Harleysville Mut. Ins. Co.*, which remains the seminal ruling on "occurrence" in South Carolina, wherein the Court held the following:

> An occurrence was once simply defined as an "accident." However, in 1966, the occurrence definition was expanded to include "continuous or repeated exposure to substantially the same general harmful conditions." This Court, among others, has struggled to discern the meaning of the expanded occurrence definition in the context of progressive damage cases. The lack of a clear meaning, we believe, leaves us with an ambiguity, which we must construe against the insurer. Accordingly, we construe the ambiguous definition of occurrence in favor of the insured, Crossmann, and ***find the insuring language of the policies was triggered by the damages caused by repeated water intrusion.***

*Id.*, 717 S.E.2d 589, 592-93, 395 S.C. 40, 47 (2011). Likewise, the majority of courts around the country hold that a claim for breach of contract or faulty workmanship can constitute an occurrence in a CGL policy, provided property damage from an unforeseeable act occurs. *See e.g. Netherlands Ins. Co. v. Main Street Ingredients, LLC*, 745 F.3d 909, 917 (8th Cir. 2014) (holding that "an 'occurrence' can occur in a breach of contract context"); *Ohio Cas. Ins. Co. v. Terrace Enters., Inc.*, 260 N.W.2d 450, 453 (Minn.1977) (en banc) (holding same); *Am. Family Mut. Ins. Co. v. Am. Girl, Inc.*, 268 Wis.2d 16, 673 N.W.2d 65, 76 (2004) ("[A] loss actionable only in contract can

17

... be the result of an 'occurrence.'").[5]

Conversely, Plaintiffs cite to two cases both of which are inapposite. Plaintiffs' first cited case, *Stroup Sheet Metal Works, Inc. v. Aetna Cas. & Surety Co.*, involves a general contractor who sued Stroup Sheet Metal Works, Inc. ("Stroup") and another

---

[5] *See also Fejes v. Alaska Ins.*, 984 P.2d 519 (Alaska 1999) (holding there was an "occurrence" and coverage for damages caused by a subcontractor's defective work on a septic system); *United States Fire Ins. v. J.S.U.B.*, Inc., 979 So.2d 871 (Fla.2007) (holding that a subcontractor's defective soil preparation, which was neither expected nor intended from the standpoint of the general contractor, was an "occurrence" under the CGL policy and the structural damage to the completed homes was property damage under the CGL policy); *Sheehan Constr. v. Continental Cas. Co.*, 935 N.E.2d 160, modified 938 N.E.2d 685 (Ind.2010) (on other grounds) (holding that faulty workmanship may constitute an "occurrence" if the resulting damage is an event that occurs without expectation or foresight); *Lee Builders, Inc. v. Farm Bureau Mut. Ins.*, 281 Kan. 844, 137 P.3d 486 (2006) (holding unforeseen and unintended damage from leaking windows installed by an insured's subcontractor was caused by an "occurrence"); *Wanzek Constr., Inc. v. Employers Ins.*, 679 N.W.2d 322 (Minn.2004) (holding damage to a swimming pool caused by a subcontractor was covered under a CGL policy); *Architex Ass'n, Inc. v. Scottsdale Ins.*, 27 So.3d 1148 (Miss.2010) (holding the term "occurrence" cannot be construed in such a manner as to preclude coverage for unexpected or unintended "property damage" resulting from negligent acts or conduct of a subcontractor unless otherwise excluded); *Revelation Indus. v. St. Paul Fire & Marine Ins.*, 350 Mont. 184, 206 P.3d 919 (2009) (holding property damage to an insured's products or completed work done for the insured by a subcontractor is an "accident" and the CGL policy provides coverage to the insured); *McKellar Dev. v. Northern Ins.*, 108 Nev. 729, 837 P.2d 858 (1992) (holding soil compaction performed by subcontractors, which caused damage to buildings built by an insured, was an "occurrence" and covered under the Broad Form Property Damage endorsement); *High Country Assocs. v. N.H. Ins.*, 139 N.H. 39, 648 A.2d 474 (1994) (holding that actual damage to the structure of the condominium units by continuous exposure to moisture from defective construction resulted in an "occurrence" covered by the CGL policy); *Corner Constr. v. United States Fid. and Guar.*, 638 N.W.2d 887 (S.D.2002) (holding that the CGL policy provided coverage for a general contractor's liability for property damage to the building as a result of the subcontractor's faulty workmanship, which was an "accident" resulting in property damage); *Travelers Indem. Co. of America v. Moore & Assocs., Inc.*, 216 S.W.3d 302 (Tenn.2007) (holding that defective workmanship may constitute an "occurrence" under a CGL policy; damages caused by faulty workmanship are "property damage" and "damages resulting from the faulty workmanship of a subcontractor are not excluded from coverage"); *Lamar Homes, Inc. v. Mid–Continent Cas. Co.*, 242 S.W.3d 1 (Tex.2007) (holding that a general contractor's defective construction or faulty workmanship in building a house foundation is an "occurrence" within the meaning of the CGL policy)].

18

sub-contractor, alleging that both breached their respective contracts by improperly installing a roof at a local school. *Id.*, 268 S.C. at 206, 232 S.E.2d 885. Although Stroup tendered defense of the claim to its insurer, Aetna Cas. & Surety Co. ("Aetna"), Aetna rejected the tender. *Id.* Stroup then filed suit, arguing that the rejection was improper. In upholding the rejection, the Court based its decision not upon the type of legal claim asserted, but upon the admitted absence of property damage.

First, the Court noted that the general contractor alleged only that the roof installation was improper—not that the installation caused any damage to the school or other property. *Id.*, 268 S.C. at 206, 232 S.E.2d 885. The Court then discussed the architect's findings, which were "that numerous panels in the roof deck had ruptured such that approximately 80% of the deck and roof had to be torn out and rebuilt." *Stroup Sheet Metal Works, Inc.,* 268 S.C. at 208, 232 S.E.2d at 886. The Court pointed out that the general contractor "admitted that there are defects in the roof deck which are not the responsibility of [Stroup]", rather, these are the responsibility of the other sub-contractor. *Id.*, 268 S.C. at 208-09, 232 S.E.2d at 886. According to the Court, "[t]here is nothing in the policy … that would warrant the conclusion that Aetna is obligated to pay for faulty workmanship, and that is the gist of [the general contractor's] claim…. The terms of the policy, quoted hereinabove, protect Stroup against 'an accident … which results … in … **_property damage_** neither expected nor intended from the standpoint of the insured.'" *Id.*, 268 S.C. at 213, 232 S.E.2d at 888-89. (Emphasis added.) Thus, the Court concluded that "*[i]t is inescapable that Bonitz was to blame for the faulty workmanship, and it is difficult to understand why [the general contractor] sued Stroup after completely exonerating Stroup in its letter signed by the president*." *Id.* (emphasis added).

The Court's holding in *R.A. Earnhardt Textile Mach. Div., Inc. v. S.C. Ins. Co.*, the second and last case Plaintiffs cite, is also inapposite. There, the seller of textile machinery sought a judicial declaration that its insurer's refusal to defend it in a federal lawsuit by the buyer breached their CGL policy. *Id.*, 277 S.C. at 88, 282 S.E.2d at 856. In holding that the insurer did not owe a duty of defense, the court examined the allegations against the seller. Whereas the CGL policy conditioned coverage upon the occurrence of "property damage", the three count complaint against the seller did not allege property damage. *Id.* 277 S.C. at 90, 282 S.E.2d at 857. For instance, Count I, which was for breach of contract, alleged only that the textile equipment did not conform to the parties' sales agreement; while counts II and III, which were for fraud and violation of South Carolina's Unfair and Deceptive Trade Practices Act, alleged that the seller "knowingly and willfully misrepresented the condition of the machinery in question." *Id.* The court's holding, as in *Stroup*, was *not* that a claim for breach of contract can not constitute an "occurrence" under a CGL policy, but that a claim which does not allege property damage is not an occurrence under a CGL policy. *Id.*

This Court should adhere to S.C. Ann. §38-77-160, the precedent in *Newman* and *Crossman* discussed above, and the plain "occurrence" language in the Policies which Pickens and Plaintiffs bargained for; *i.e.*, that an "occurrence" is an accident which causes property damage. Plaintiffs' proposed interpretation rewrites the Policies' coverages and renders them all illusory upon the mere assertion of a breach of contract claim. The South Carolina Court of Common Pleas and the Court of Appeals have already held that Pickens' breach of its contract with Winthrop caused property damage. *See respectively ECF Dkt. nos. 1-10 and 1-12.* Therefore, as a matter of law, an

"occurrence" exists.   Accordingly, Plaintiffs' Occurrence argument must be overruled and Defendants' Joint Cross-Motion for Judgment on the Pleadings granted.

**III.    The Policies' Contractual Liability Exclusion Is Inapplicable.**

Plaintiffs' final argument is that "because Winthrop elected recovery under a theory of breach of contract", the Policies "Contractual Liability" Exclusion applies. *See Pls. Memo. in Resp., ECF Dkt. no. 27-1, p. 15.* As referenced above, this Court should not reach the merits of this argument. However, to the extent it does, this argument should also be overruled.

The "Contractual Liability" Exclusion in Plaintiffs' Policies states the following:

[Coverage will not apply to] "property damage" … the Insured is obligated to pay damages by reason of the ***assumption of liability*** in a contract or agreement. This exclusion does ***not*** apply to liability for damages:

(1)    That the insured would have in the absence of the contract or agreement.

*                    *                    *

*See PNSIC Policy, ECF Dkt. no. 1-1, p. 103; PNMCIC Policy, ECF Dkt. no. 1-2, p. 23.*[6]

Thus, according to Plaintiffs, because "Winthrop elected recovery under a theory of breach of contract", "the Contractual Liability Exclusion" bars coverage. *See Pls. Memo. in Resp., ECF Dkt. no. 27-1, p. 15.*

Before addressing the Exclusion itself, *it is incumbent to note that Plaintiffs' Motion repeatedly concedes that the exception to the Exclusion applies*.  The Exception is that the Contractual Liability Exclusion does not apply to "liability for damages" which "the insured would have in the absence of the contract or agreement". *See supra.*

---

[6] Plaintiffs' Memorandum references the "Contractor's Limitation Endorsement" in the PNMCIC Policy, which consistent with the Policies' Contractual Liability Exclusion says that coverage is barred for "liability for … 'property damage' ***assumed*** by the insured under any contract." *See Pls. Memo. in Resp., ECF Dkt. no. 27-1, p. 15 (citing PNMCIC Policy, ECF Dkt. no. 1-1, p. 23) (emphasis added).*

Plaintiffs' Motion explicitly concedes on at least six separate occasions that Pickens still would have been liable to Winthrop because the jury in the underlying lawsuit deemed Pickens negligent. *See Pls. Memo. in Resp., ECF Dkt. no. 27-1, p. 4 (stating that "the jury found against Pickens on both breach of contract and negligence causes of action"); see also id. at pp. 4, 5, 11, 12, 14, 15*. Further, these concessions are reiterated in both Plaintiffs' Amended Complaint and the trial and appellate court records. *See Pls. Amd. Compl., ECF Dkt. no. 5, ¶¶34-35, p. 7; Verdict Form, ECF Dkt. no. 1-10, p. 4 and Ct. of Appeals Ruling, ECF Dkt. no. 1-12, p. 9 (wherein the Appellate Court noted that "[t]he circuit court further held there was evidence from which the jury could find the fire would not have caused such extensive damages but for the present of combustibles" and "that there was evidence from which the jury could find Pickens' negligence or breach of contract proximately caused Winthrop's damages.")*. Thus, even if this Exclusion applies, which it does not, Plaintiffs admit and the Record confirms that the Exception does. Therefore, Plaintiffs' Contractual Liability Exclusion argument must be over-ruled.

Furthermore, even if this Court examines the Contractual Liability Exclusion, itself, it should hold that it is inapplicable. The Exclusion states that coverage does not apply to "'property damage' … the Insured is obligated to pay … by reason of the ***assumption of liability*** in a contract or agreement. *See PNSIC Policy, ECF Dkt. no. 1-1, p. 103; PNMCIC Policy, ECF Dkt. no. 1-2, p. 23* (emphasis added). "Assumption of liability", which is not defined in the Policies, entails Pickens agreeing, in contract, to assume liability originally incurred by Winthrop. *See e.g. Couch on Insurance, 3rd ed., Contractual Liability Exclusion* (stating that "'[a]ssumed liability', for purposes of a

contract-related exclusion in a liability insurance policy, is liability originally incurred by a third party but then taken on by another; ***it is not liability incurred by a contract breach***") (emphasis added). Although South Carolina does not appear to have yet interpreted this Exclusion, numerous courts around the country have and their holdings are in accord.[7]

Here, there is no allegation in the Pleadings, any findings in the South Carolina

---

[7] *See e.g. Indiana Ins. Co. v. Kopetsky*, 11 N.E.3d 508 (Ind. Ct. App. 2014), opinion corrected on reh'g, 14 N.E.3d 850 (Ind. Ct. App. 2014) (holding that the Contractual Liability Exclusion did not bar coverage for the insured lot vendor in an action by a developer, regarding the contaminated status of the lots, although the developer's allegations pertained to the vendor's alleged failure to inform the developer of the potential contamination in breach of an agreement, as the Exclusion did not apply to liability incurred by breach of contract but, rather, to liability assumed by contract from a third party); *Travelers Property Cas. Co. of America v. Peaker Services, Inc.*, 306 Mich. App. 178, 855 N.W.2d 523 (2014), appeal denied, 497 Mich. 1011, 861 N.W.2d 899 (2015) (holding that an insured did not assume the legal obligations or responsibilities of another when it contracted with a university to provide goods and services and to return the university's property to "as was" condition in the event the university's property was damaged during completion of the contract and, thus, the Contractual Liability Exclusion in the parties' CGL did not apply to preclude coverage); *Central Power Systems & Services, Inc. v. Universal Underwriters Ins. Co.*, 49 Kan. App. 2d 958, 319 P.3d 562 (2014) (holding that exclusions in a general liability and umbrella insurance policies for "liability assumed under any contract or agreement" did not limit coverage available to a gas engine supplier in connection with a customer's negligence and negligent misrepresentation claims regarding missing wiring harnesses, as the supplier did not assume the contractual obligations of another); *Mid-Continent Cas. Co. v. Castagna*, 410 S.W.3d 445 (Tex. App. Dallas 2013), reh'g overruled, (Oct. 2, 2013) and review denied, (Mar. 21, 2014) (holding that the Contractual Liability Exclusion contained in a homebuilder's CGL policies did not bar coverage for property damage to a home caused by the builder's failure to construct a suitable foundation, as the builder did not assume any contractual obligation in addition to or beyond, the general law of implied warranty of good workmanship); *United Co-op. v. Frontier FS Co-op.*, 2007 WI App 197, 304 Wis. 2d 750, 738 N.W.2d 578 (Ct. App. 2007) (ruling that CGL policy exclusions which removed coverage for "liability assumed under any contract" did not operate to prevent coverage for the insured vendor in the purchaser's action for breach of contract in which the vendor effectively warranted that it was selling pollution-free property to the purchaser and agreed to "indemnify" the purchaser for "environmental liability" resulting from the vendor's operations on the property, as the vendor did not contractually assume the liability of a third party but rather assumed the obligation to deliver non-defective land.).

Court of Common Pleas or Court of Appeals' rulings, or any statement in Plaintiffs'

Motion which demonstrates that the damages Plaintiffs must pay were originally

incurred by Winthrop, but then taken on by Pickens. *See supra Couch on Insurance, 3rd*

*ed., Contractual Liability Exclusion.*  Pickens' liability was indisputably based upon the

jury's findings that Pickens' breached "its contract with Winthrop" by improperly storing

certain combustibles, which resulted in a fire. *See Verdict Form, ECF Dkt .no. 1-10, p.*

*4; Ct. of Appeals Ruling, ECF Dkt. no. 1-12, p. 20 of 21.* South Carolina's rules of

contract construction require that Plaintiffs' Contractual Liability Exclusion be narrowly

interpreted. *McPherson By and Through McPherson v. Michigan Mut. Ins. Co.*, 310 S.C.

316, 319, 426 S.E.2d 770, 771 (1993).[8] Therefore, via this lens and the undisputed facts

detailed above, Pickens' liability is based not upon the assumption of Winthrop's liability,

but upon Pickens' breach of its roofing contract with Winthrop. Accordingly, the

Contractual Liability Exclusion is inapplicable and Plaintiffs' Motion must be denied.

## **CONCLUSION**

WHEREFORE, Defendants, The Winthrop University Trustees for the State of

South Carolina, and Pickens Roofing and Sheet Metals, Inc. respectfully and jointly

request that this Honorable Court issue an order, which commands the following:

1.    That Plaintiffs' Motion for Judgment on the Pleadings is denied with

---

[8] Further, "the burden rests upon the insurer to sustain and establish a defense of an excepted risk, and any doubt as to the meaning of a clause in an insurance policy should be resolved in … favor of the coverage of the policy." *Fowle v. Martin*, 264 F.Supp. 363, 369 (D.S.C. 1967) (Hon. Simons) (citing *Foster v. Canal Ins. Co.*, 227 S.C. 322, 88 S.E.2d 59 (1955); *Hawkins v. North Carolina Mut. Life Ins. Co.*, 170 S.C. 478, 170 S.E. 833 (1933); *Keistler Co. v. Aetna Ins. Co.*, 124 S.C. 32, 117 S.E. 70 (1923); *Heyward v. American Casualty Co. of Reading, Pa.*, 129 F.Supp. 4 (E.D. S.C.1955)). In addition, if Plaintiffs sought to define "assumption of liability", then they should have included such a definition in their 237 pages of Policy provisions.

prejudice;

     2.     That Defendants' Motion for Judgment on the Pleadings is granted;

     3.     That Plaintiffs must indemnify Pickens to the full amount of the Policies' applicable limits, including $6,000,000.00 and all post-judgment interest incurred;

     4.     That Defendants, Pickens and Winthrop, consistent with *Hegler v. Gulf Ins. Co.*, 270 S.C. 548, 243 S.E.2d 443 (S.C. 1978) and its progeny, are entitled to their reasonable attorney fees and costs for defending this Action; and

     5.     That Defendants are entitled to any other relief that this Court deems just and proper.

BUTLER WEIHMULLER KATZ CRAIG, LLP     POPE FLYNN, LLC

_s/ T. Nicholas Goanos_____     _s/ R. Patrick Flynn_____
L. Andrew Watson     R. Patrick Flynn
SC Fed. Bar No.: 11332     Pope Flynn, LLC
T. Nicholas Goanos     P.O. Box 70
SC Fed. Bar No.: 11971     Charleston, South Carolina  29402
Zachary M. Jett     Phone:     (843) 834-3426
SC Fed. Bar No.: 12102     E-mail:     pflynn@popeflynn.com
Peter W. Vogt     *Attorney for Defendant Pickens*
Admitted *Pro Hac Vice*     *Roofing and Sheet Metals, Inc.*
11605 N. Community House Rd., Ste. 150
Suite 150
Charlotte, North Carolina 28277
Phone:     (704) 543-2321
Facsimile:     (704) 543-2324
E-mail:     awatson@butler.legal
     tgoanos@butler.legal
     zjett@butler.legal
     pvogt@butler.legal
*Attorneys for Defendant The Winthrop Univ.*
*Trustees for the State of South Carolina*

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 25th day of August 2017, I electronically filed the foregoing document with the United States District Court for the District of South Carolina by using the CM/ECF system, which will automatically deliver electronic notification of the same to the following counsel of record:

Jason Scott Luck
Garrett Law Offices, LLC
1075 E. Montague Ave.
North Charleston, South Carolina  29405
jluck@garrettlawsc.com
*Attorney for Plaintiff*

Diane U. Montgomery
Midkiff, Muncie & Ross, P.C.
300 Arboretum Place, Suite 420
Richmond, Virginia  23236
dmontgomery@midkifflaw.com
*Attorney for Plaintiff*

William T. Kesler, Jr.
Midkiff Muncie & Ross, P.C.
1511 Sunday Drive, Suite 214
Raleigh, North Carolina  27607
bkesler@midkifflaw.com
*Attorney for Plaintiff*


　　　　　　　　s/ T. Nicholas Goanos
　　　　　　　　　T. Nicholas Goanos